ORAL ARGUMENT NOT YET SCHEDULED

IN THE
UNITED STATES CIRCUIT COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT
_____

CASE NO. 13-5205
_____

ALPINE PCS, INC.
Plaintiff-Appellant,

vs.

FEDERAL COMMUNICATIONS COMMISSION,
Defendant-Appellee.
_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
_____

BRIEF OF APPELLANT ALPINE PCS, INC.
_____

Ross M. Babbitt
Ross M. Babbitt, Co., LPA
Hoyt Block, Suite 204
700 West St. Clair Avenue
Cleveland, Ohio 44113

Steven M. Buckman
Buckman Legal, PLLC
4315 50th St N.W.
Washington, D.C.  20016

For Appellant Alpine PCS,
Inc.

## <u>Certificate of Parties, Rulings Under Review,<br>and Related Cases</u>

### A. <u>Parties</u>

The parties to this appeal are Appellant Alpine PCS, Inc. ("Alpine"), a Michigan corporation established for the purpose of providing PCS telecommunications services, and Appellee Federal Communications Commission (the "FCC"). There are no amici involved in this matter.

### B. <u>Ruling Under Review</u>

The ruling under review is the ruling of June 3, 2013, by District Judge Robert L. Wilkins granting the FCC's motion to dismiss for lack of jurisdiction for the reasons set forth in open court on June 3, 2013. Specifically, Alpine is appealing the District Court's dismissal of Alpine's breach of contract claims against the FCC on the grounds that the FCC is immune from suit in the District Court because it enjoys sovereign immunity.

### C. <u>Related Cases</u>

The case on review has not been previously before this Court or any other court. Appellant is not aware of any related cases currently pending in this Court or any other court.

**D. <u>Corporate Disclosure Statement</u>**

Appellant does not have a parent corporation and no publicly-held

corporation holds ten-percent or more of the stock of Alpine PCS, Inc.

**E. <u>Deferred Appendix</u>**

A deferred appendix is being used in this appeal pursuant to this

Court's Order.

 /s/ Ross M. Babbitt     
Ross M. Babbitt
Attorney for Appellant Alpine PCS, Inc.

## Table Of Contents

I. Jurisdictional Statement ..............................................................1

II. Statement of Issues Presented For Review ..........................1

III. Statutes and Regulations ..........................................................2

IV. Statement of the Case ................................................................2

V. Statement Of Facts ......................................................................5

VI. Summary of Argument ............................................................13

VII. Argument ..................................................................................13

    The District Court's Dismissal Of Alpine's Breach Of
    Contract Claim Against The FCC Was Jurisdictional
    And May Be Overturned On This Court's De Novo
    Review. ....................................................................................13

    Congress Clearly Intended For The FCC To Take All
    Steps Reasonably Necessary To Engage In Private
    Contracts With The Public. ....................................................14

    The FCC Clearly Intended For All Lawsuits Arising
    Out Of The Notes And Security Agreements To Be
    Brought In The District Court. ..............................................16

    The District Court Should Have Deferred To The
    FCC's Interpretation Of Its Jurisdiction And
    Authority To Select The District Court As The
    Forum For Alpine's Lawsuit. ................................................17

    Congress Did Intend To Waive The FCC's Sovereign
    Immunity To Alpine's Breach Of Contract Suit. ..................20

VIII. Conclusion and Relief Sought ..............................................21

# <u>Table of Authorities</u>

## *Cases*

*Federal Communication Commission v. Nextwave Personal
Communications Inc.*, 537 U.S. 293 (2003)..............................................10

*United States v. Mitchell*, 463 U.S. 206, 210 (1983)................................13

*\*City of Arlington v FCC*, 133 S. Ct. 1863 (2013)....................................13, 18

*Waters v. Rumsfeld*, 320 F.3d 265, 271 (DC Cir. 2003)...........................13

*M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)...................16

*Chevron U.S.A. Inc. v Natural Resource Def. Council, Inc.,*
    467 U.S. 837, 842-43 (1984).......................................................18, 19

*\*Franchise Tax Bd. Of California v United States Postal
    Service*, 467 U.S. 512, 521 (1984)......................................................20

*Keifer & Keifer v. Reconstruction Finance Corp.,
    306 U.S. 381, 389 (1939)*...................................................................20

*FHA v. Burr*, 309 U.S. 202, 245 (1940)....................................................20

## *Administrative Decisions*

*In re Alpine PCS, Inc.*, 22 FCC Rcd. 1492..................................................9

*In re: Alpine PCs, Inc., et al.*, 25 FCC Rcd. 469 (FCC 2010)....................11

\*indicates cases principally relied upon

iv

# Glossary of Abbreviations

**2007  Order** – Refers to the FCC's Wireless Telecommunications Bureau published as *In re Alpine PCS, Inc.*, 22 FCC Rcd. 1492

**Forum Selection Clause** – Refers to the language in the Notes identifying the U.S. District Court for the District of Columbia as the exclusive forum for all lawsuits arising out of the Notes

**JA** – Refers to the Joint Appendix to this appeal

**Licenses** – Refers to the two PCS spectrum licenses Alpine won at auction in 1996

**Notes** – Refers to the two promissory notes reflecting Alpine's indebtedness to the FCC for the Licenses having a face value of $26,182,575

**Omnibus Order** – Refers to the FCC's order disposing of the Waiver Request published as *In re: Alpine PCs, Inc., et al.*, 25 FCC Rcd. 469 (FCC 2010)

**Restructuring Request** – Refers to Alpine's 2002 request to the FCC for a restructuring of the debts secured by the Security Agreements and recorded in the Notes

**Security Agreements** – Refers to the two security agreements entered between the FCC and Alpine by which the FCC took the position of secured creditor for Alpine's debts as set out in the Notes

**Waiver Request** – Refers to Alpine's 2002 request to the FCC for a waiver of a due date for a payment under the Notes

## I.    Jurisdictional Statement

This appeal is made from the final order of the District Court dated June 3, 2013, which dismissed Alpine's Complaint with prejudice and disposed of all parties' claims arising thereunder.  This Court has jurisdiction to hear Alpine's appeal of the District Court's order dismissing the Complaint pursuant to 28 U.S.C. § 2107 based on Alpine's timely filing of its notice of appeal July 1, 2013.  The basis for the District Court's jurisdiction to hear Alpine's claims for relief as stated in the Complaint is the subject of this appeal.

## II.    Statement of Issues Presented For Review

1.    Was the District Court required to defer to the FCC's interpretation of its Congressionally-established jurisdiction when the FCC selected the U.S. District Court for the District of Columbia as the sole forum in which Alpine or the FCC may bring lawsuits arising out of their contractual relationships?

2.    When the FCC clearly expresses its intention for any lawsuits arising out of a commercial contract to which it is a party to be brought in a District Court, may the FCC later claim that it is immune from such suit to bar the counterparty from the benefit of its bargain with FCC?

3.      Does the FCC have the authority to select a US District Court as the sole forum for any lawsuits arising out of a commercial contract to which it is a party when Congress has explicitly authorized the FCC to enter into the commercial contract at issue and to otherwise conduct itself as a private commercial actor?

### III.   Statutes and Regulations

Pertinent statutes and regulations for this appeal are:

47 USC § 309

47 CFR § 24.709

47 CFR § 24.711

47 CFR § 1.2110

31 C.F.R. § 902.2

47 C.F.R. § 1.2110

### IV.   Statement of the Case

This is a case of first impression concerning whether a federal agency's own selection of an exclusive forum for contract-based lawsuits may later be repudiated by that agency when the commercial counterparty attempts to bring suit in the designated forum.  Specifically, this appeal arises from the FCC's successful argument to the District Court that it was not bound by the terms of the forum selection clause in the contract documents between it and Appellant Alpine.  This case differs from the

existing authorities interpreting waivers of sovereign immunity and the

authority of federal agencies to select a forum in their commercial disputes

because in this case it was the FCC itself which drafted the unambiguous

contract language which selected the District Court as the sole forum for all

lawsuits arising out of the FCC's and Alpine's commercial relationship.  At

issue in the larger context is whether a counterparty to a commercial

contract with a federal agency can rely on the benefit of its bargain as

embodied in the contract language without bearing the uncertainty that the

federal agency may later repudiate that portion of the contract when it is

convenient for it to do so.

In the mid-1990's Congress authorized and instructed the FCC to

foster competition in the telecommunications industry by encouraging the

participation of small businesses in the telecommunications spectrum

auction process.  In so doing, Congress authorized and instructed the FCC

to undertake various commercial activities with those small businesses in

order to promote their participation.  Alpine's lawsuit below is about the

commercial activities of the FCC in executing Congress' instruction and the

FCC's civil liability to Alpine as a commercial actor.  In the contracts

between Alpine and the FCC, the US District Court for the District of

Columbia was selected the exclusive forum for Alpine to seek redress from

the FCC for liability arising out of the contracts.   It was in reliance on the FCC's forum selection that Alpine brought the case below in the District Court.

In response to Alpine's breach of contract claims below, the FCC filed a motion to dismiss on the basis that it now claims that it was immune from suit in that court because it enjoyed sovereign immunity.  The District Court found that the FCC's sovereign immunity to suit had not been waived and, as a result, determined that it lacked jurisdiction to hear Alpine's breach of contract claims against the FCC.  That finding was incorrect because Congress specifically authorized the FCC to enter into the commercial relationships which gave rise to the FCC's liability to Alpine and because the FCC itself, in exercising its Congressionally-granted discretion, chose the US District Court for the District of Columbia as the sole and exclusive forum for this lawsuit.  That finding was also incorrect because the District Court was required to defer to the FCC's own interpretation of its jurisdiction, including the FCC's explicit selection of the District Court as the sole forum for any lawsuits between it and Alpine relating to the contractual relationship between them.

## V.    Statement Of Facts

### A.    In 1996 Alpine Was The Winning Bidder In A Wireless Spectrum Auction Open To Small Businesses.

Congress enacted 47 USC § 309 to instruct and empower the FCC to design a competitive bidding process for the award of wireless spectrum licenses to designated small businesses to foster competition in the wireless telecommunications industry.  47 USC § 309(j)(3)(B).  Congress further empowered and instructed FCC to enter into various commercial relationships with those small businesses, including establishing installment payments or other commercial methods of FCC's choosing, for the purpose of promoting the objective of facilitating small business participation in the spectrum bidding procedure.  47 USC § 309(j)(4)(A), (D).  In implementing Congress' instructions, the FCC designated two specific "blocks" of spectrum to be reserved for small business entities – the so-called "C" and "F" blocks.  47 CFR § 24.709.

In 1996 Alpine was the winning bidder for two licenses in a C Block auction for PCS spectrum licenses in San Luis Obispo and Santa Barbara (the "Licenses").  As Congress had instructed, the FCC permitted winning bidders to the C Block auction to pay the majority of their winning bid in installments.  47 CFR § 24.711.  The installment payment plans for these

5

two bids were commemorated by promissory notes (the "Notes") and secured by security agreements (the "Security Agreements"), as required by FCC's regulations.  47 CFR § 1.2110(g)(3).  (JA  )  The face value of the Notes was $26,182,575.  (JA  )

### B. The FCC's Promissory Notes And Security Agreements Contained A Forum Selection Clause And Contemplated Myriad Commercial Aspects To The Parties' Rights And Responsibilities.

The Notes and Security Agreements were drafted by the FCC.  The Notes were executed by Alpine as "Maker" for the benefit of the FCC and the Security Agreements were executed by Alpine and by the FCC by Marilyn J. McDermott who is identified on those documents as FCC's then-Associate Managing Director for Operations.  (JA  )  The Security Agreements incorporated the terms and conditions of the Notes, providing in Paragraph 1 that, "[i]t is expressly understood [ ] that all of the terms of the Note apply to this Agreement and that reference herein to 'this Agreement' includes both the Security Agreement herein and the Note." (JA  )

The Notes contained the following forum selection language including consent to jurisdiction of this Court and irrevocable waiver by the FCC of any objection to the jurisdiction of this Court (the "Forum Selection Clause"):

ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS
NOTE, THE SECURITY AGREEMENT, OR OTHER
DOCUMENTS EVIDENCING OR SECURING THE DEBT
TRANSACTION EVIDENCED HEREBY MAY ONLY BE
BROUGHT IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA . . . . THE PARTIES HERETO
HEREBY IRREVOCABLY WAIVE ANY OBJECTION,
INCLUDING, WITHOUT LIMITATION, ANY OBJECTION TO
THE LAYING OF VENUE OR BASED ON THE GROUNDS OF
<u>FORUM NON CONVENIENS</u>, WHICH ANY OF THEM MAY
NOW OR HEREAFTER HAVE TO THE BRINGING OF ANY
SUCH ACTION OR PROCEEDING IN THE DISTRICT OF
COLUMBIA.

(Emphasis in original) (JA  ).  The Notes also granted the FCC the right to

"assign, endorse, pledge, convey or otherwise transfer" its rights under the

Notes "to any party" irrespective of, and without regard to, any of the FCC's

or the potential assignee of the Notes' role as an agency of the United

States.  (JA  )

### C. Following An Extreme Industry-Wide Depression, Alpine Submitted A Request For Restructuring, Which The FCC Ignored For Years And Never Ultimately Ruled Upon.

Alpine made timely payments on the Notes for five years, but

ultimately needed to restructure its obligations to the FCC as a consequence

of radical disruptions in the wireless telecommunications industry in the

early 2000's.  On July 24, 2002, pursuant to then-existing 31 C.F.R. §

902.2, and at the FCC's suggestion, Alpine submitted a written Request for

Debt Restructuring (the "Restructuring Request") to the FCC's Office of

7

Managing Director, which acknowledged receipt on or about July 30, 2002. (JA  )  On or about July 31, 2002, and pursuant to then-existing 47 C.F.R. § 1.2110, Alpine submitted a Request for a Waiver ("Waiver Request") of the upcoming installment payment deadline due under the Notes.  (JA  )  The Restructuring Request and the Waiver Request were each made before Alpine was in "default" under the Notes, the Security Agreements, and then-applicable FCC rules.  For a short time thereafter, the FCC and Alpine were in regular communications concerning Alpine's Requests.  (JA  )

Within a few months, however, the FCC unilaterally cut off negotiations with Alpine.  The FCC's subsequent extreme delay in processing Alpine's Restructuring and Waiver Requests, and its complete failure to consider the Restructuring Request to this day, is what gave rise to Alpine's principal claims against it in the suit in the District Court.  It was not until January 2004 that Alpine learned that FCC was taking the position that Alpine was in default of the Notes and Security Agreements and FCC at that time returned the Restructuring Request "without action". (JA  )  After that notice, Alpine's still-pending requests were ignored for years.

Three years later, on January 29, 2007, the FCC's Wireless Telecommunications Bureau issued an Order concerning Alpine's Licenses

which explicitly indicated that FCC had not considered the Restructuring or Request on its terms, and which denied the Waiver Request. (the "2007 Order"). (JA )  *In re Alpine PCS, Inc.*, 22 FCC Rcd. 1492, fn. 2 (WTB Jan. 29 2007) ("we do not address the issue of debt restructuring in this Order"). Alpine appealed the 2007 Order, and its Restructuring Request remained outstanding and un-responded to at the time FCC decided to re-auction Alpine's spectrum. (JA )

### D. Alpine Filed For Bankruptcy Protection In A Desperate Effort To Keep FCC From Making An End-Run Around Alpine's Restructuring Request By Re-Auctioning Alpine's Spectrum.

In April 2008, despite Alpine's then-pending administrative appeal of the 2007 Order, the FCC noticed a new auction for the same spectrum and geographic markets as those granted by the Licenses. In an effort to save the Licenses, in which it had invested millions of dollars of capital paying for and developing, Alpine filed a voluntary Chapter 11 protection in the Bankruptcy Court for the District of Columbia on August 12, 2008. *In re Alpine PCS, Inc.*, Case No. 08-0543. (JA )  The principal asset class Alpine had to protect with that filing were the Licenses. On August 18, 2008, Alpine filed an Emergency Motion For (I) Interim Relief and (II) Enforcement of the Automatic Stay to seek a ruling from the bankruptcy court that the Licenses were still property of the Alpine Bankruptcy Estate

as of the August 12 petition date and, therefore, subject to the automatic stay and protected from re-auction by FCC. (JA )

There followed an extremely expedited effort by Alpine to brief and argue that the Licenses were the property of Alpine's estate and, if so, that their being re-auctioned would be violative of the automatic stay.[1] A hearing on Alpine's motion was held on August 20, 2008, and Bankruptcy Judge Martin S. Teel issued a Memorandum Decision commemorating his findings that the Licenses were not property of the Alpine estate on October 10, 2008. Docket No. 67. (JA ) Alpine appealed that decision to the District Court for the District of Columbia and to this Court. *In re Alpine PCS*, Dist. D.C. Case No. JFM-08-2055; *In re Alpine PCS*, D.C. Ct. Apps. Case No. 09-5293. (JA ) Both reviewing Courts affirmed the Bankruptcy Court without opinion. (JA )

Alpine's bankruptcy was dismissed February 24, 2011. (JA ) No Court involved in the Alpine bankruptcy ever considered the FCC's civil liability to Alpine as contemplated in this lawsuit.

---

[1] The Alpine Bankruptcy proceeding was heavily flavored by a roughly analogous case which went to the Supreme Court in 2002 and resulted in the Court's finding that a pre-default bankruptcy petition by a license holder like Alpine did result in the licenses being considered part of the bankruptcy estate and, hence, not subject to automatic cancellation by FCC. *Federal Communication Commission v. Nextwave Personal Communications Inc.*, 537 U.S. 293 (2003).

### E. The FCC's Final Decision Bearing On The Waiver Request Was Issued January 5, 2010.

The FCC issued a Memorandum Opinion and Order in an omnibus opinion (the "Omnibus Order") which incorrectly grouped Alpine's Requests with those of several dissimilarly-situated third parties' waiver- or restructuring requests. *In re: Alpine PCs, Inc., et al.*, 25 FCC Rcd. 469 (FCC 2010). (JA  ) In the Omnibus Order, the FCC affirmed its decision to deny the Waiver Request and admitted that it never ruled on the Restructuring Request at any time, and instead returned it "without action" and never again considered it. (JA  ) Alpine appealed the Omnibus Order to this Court in Case No. 10-1020. (JA  ) That appeal was denied by summary Order December 21, 2010. (JA  )

### F. Alpine Filed A Complaint Against The FCC On January 3, 2013, In The U.S. District Court For The District Of Columbia, Which That Court Dismissed June 3, 2013.

The lawsuit below was commenced January 3, 2013, against the FCC and non-party to this appeal Pioneer Credit Recovery, Inc. Alpine sought relief from the defendants on a variety of theories, though its principal claim, Count One in the Complaint, was against the FCC for breach of the Notes and Security Agreements. (JA  ) That claim was brought in the District Court in specific reliance on the Forum Selection Clause.

The FCC filed a motion to dismiss the Complaint on March 5, 2013, and Alpine filed its opposition brief on April 5, 2013.  (JA  )  On May 20, 2013, the US Supreme Court issued its opinion in *City of Arlington v FCC*, 133 S. Ct. 1863 (2013), which Alpine cited to the District Court as supplemental authority on May 23, 2013.  (JA  )  The FCC did not file a written response to Alpine's supplemental authority filing.

At oral argument on the motion to dismiss, the FCC admitted that it had the option of bringing its own breach of contract claims against Alpine in the District Court.  (JA  )  Promptly following the conclusion of oral argument, the Court read its ruling on the FCC's motion into the record dismissing Alpine's breach of contract claims against the FCC with prejudice on the basis that the FCC enjoyed sovereign immunity from suit in that court.  (JA  )  No written memorandum of opinion followed, and none of the District Court's decision addressed the important implication of the *City of Arlington* decision to these proceedings.  The District Court did not reach the FCC's substantive theories for dismissal of Alpine's breach of contract claims in light of its dismissal of those claims on jurisdictional grounds.

## VI.   <u>Summary of Argument</u>

This Court should reverse the District Court's jurisdictional dismissal of Alpine's breach of contract claims against the FCC.  The statute authorizing the FCC's commercial transactions with Alpine is unambiguous in its instruction to the FCC to engage in commercial activities and to take on the role of commercial actor.   The District Court was required to defer to the FCC's interpretation of Congress' instruction which included the FCC's selection of the District Court as the sole forum for all lawsuits arising out of the Notes and Security Agreements.  And the intent of Congress for the FCC to be subject to the variety of consequences attendant to engaging in private party contracting is unambiguous from the text of the statutes and the expressed Congressional policy.

## VII.  <u>Argument</u>

### A. *The District Court's Dismissal Of Alpine's Breach Of Contract Claim Against The FCC Was Jurisdictional And May Be Overturned On This Court's De Novo Review.*

Sovereign immunity is a jurisdictional issue, the waiver of which is a prerequisite to jurisdiction.  *United States v. Mitchell*, 463 U.S. 206, 210 (1983) (United States may not be sued without its consent, the existence of which is a prerequisite for jurisdiction).  The extent to which a district court must defer to a federal agency's interpretation of its jurisdiction is likewise,

necessarily, a jurisdictional issue. *See City of Arlington v FCC*, 133 S. Ct. 1863 (2013). An appeals court review a district court dismissal on jurisdictional grounds on a de novo standard. *See Waters v. Rumsfeld*, 320 F.3d 265, 271 (DC Cir. 2003) (appeals court with independent obligation to determine jurisdiction de novo).

In this matter, the District Court dismissed Alpine's breach of contract claims against the FCC on jurisdictional grounds, specifically focusing on the waiver of the FCC's sovereign immunity. The District Court did not consider whether it was required to defer to the FCC's interpretation of its jurisdiction to select the forum for its contract-based lawsuits. This Court must undertake a de novo review of Congress' instructions and the FCC's interpretation of those instructions and should determine that the District Court was in error in dismissing Alpine's breach of contract claims on jurisdictional grounds.

### B. Congress Clearly Intended For The FCC To Take All Steps Reasonably Necessary To Engage In Private Contracts With The Public.

The contracts which give rise to Alpine's dispute with the FCC were drafted explicitly for the purpose of effecting Congress' stated intention of facilitating small business participation in the wireless telecommunications

industry.  Congress explained those intentions as being guided by the explicit policy of:

> [P]romoting economic opportunity and competition and ensuring that new and innovative technologies are readily accessible to the American people by avoiding excessive concentration of licenses and by disseminating licenses among a wide variety of applicants, including small businesses....

47 U.S.C. § 309(j)(3)(B) .  Congress thereby articulated its intention to intervene in the market with the ultimate goal of avoiding excessive concentration of licenses in the wireless telecommunications industry.

In order to further articulate its policy, Congress provided a set of instructions to the FCC which served as the agency responsible for the granting of wireless spectrum licenses.  To that end, Congress instructed the FCC to implement its intended policy by:

> [C]onsider[ing] alternative payment schedules and methods of calculation, including lump sums or **_guaranteed installment payments_**, with or without royalty payments, **_or other schedules or methods that promote the objectives described in paragraph (3)(B)_**, and combinations of such schedules and methods;

(Emphasis added.) 47 U.S.C. § 309(j)(4)(A).  With the above-quoted instructions to the FCC, Congress' made its intent for the FCC to engage in commercial transactions (ie, commercial lending and the taking of security interests) in the same capacity as a private actor explicit.

### C. The FCC Clearly Intended For All Lawsuits Arising Out Of The Notes And Security Agreements To Be Brought In The District Court.

The FCC's understanding of its mandate from Congress that it was to become a commercial lender and secured party is likewise clear from its own rules. Specifically, 47 CFR § 1.2110(g)(3) required that any small business winning bidder like Alpine, "must execute a promissory note and security agreement as a condition of the installment payment plan." This instruction manifested in the language of the Notes and Security Agreement, which was executed by the FCC and incorporates all of the terms of the Notes.

The Notes, which were drafted by FCC, contain the Forum Selection Clause which requires that,

> ANY LEGAL ACTION OR PROCEEDING RELATING TO THIS NOTE, THE SECURITY AGREEENT, OR OTHER DOCUMENTS EVIDENING OR SECURING THE DEBT TRANSACTION EVIDENCED HEREBY MAY ONLY BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

There is no ambiguity in this selection of this forum for this lawsuit. Forum selection clauses are prima facie valid and should be honored by the parties and enforced by courts. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972). This would be the case if Alpine were contesting the suitability of

16

this forum as much as it is the case here, where the FCC is seeking to repudiate its own selected forum.

The Notes provide further direct and unambiguous evidence that the FCC understood and intended to be held to the standards of a commercial actor when it preserved for itself the right to "assign, endorse, pledge, convey or otherwise transfer" its rights under the Notes "to any party." If the FCC had exercised its right to assign the Notes to any private party, Alpine would face no procedural obstacle to seeking compensation from the assignee had that assignee conducted itself like the FCC conducted itself with Alpine.

That the FCC understood and intended that it would serve as commercial lender and secured creditor to Alpine is abundantly clear. There is likewise no precedent in this Circuit or elsewhere which Alpine has located, nor any which the FCC has cited, in which a governmental agency has explicitly chosen a forum within its Congressionally-bestowed discretion only to later repudiate its chosen forum.

### D. The District Court Should Have Deferred To The FCC's Interpretation Of Its Jurisdiction And Authority To Select The District Court As The Forum For Alpine's Lawsuit.

The FCC's selection of the District Court as the sole forum for all lawsuits between the FCC and Alpine relating to the Notes and Security

17

Agreements was a decision which the FCC made within its authority from

47 USC § 309.  As recently repeated and further explained by the Supreme

Court, courts are required to defer to an agency's reasonable interpretation

of the scope of its own authority when an enabling statute is ambiguous.

*City of Arlington v FCC*, 133 S. Ct. at 1863.  That deference is required

when a court is considering whether the agency correctly defined its own

jurisdiction or any other application of its enabling statute.  Id. at 1868.

The Court explained, plainly, that the question a court must resolve before

deferring to an agency's interpretation of its enabling statute is, "simply,

whether the agency has stayed within the bounds of its statutory authority."

Id.

     The *City of Arlington* opinion clarified the scope of the Court's two-

step analysis articulated in *Chevron U.S.A. Inc. v Natural Resource Def.*

*Council, Inc.,* 467 U.S. 837, 842-43 (1984).  Under the *Chevron*

instructions, courts follow a two-step analysis when reviewing a federal

agency's interpretation of its enabling statute.  *Chevron* at 842-43.  First, a

court must determine whether the statute in question is ambiguous before

considering whether further interpretation of the regulation is required.  Id.

If the regulation is ambiguous, then the court's analysis is limited to

determining whether the agency's interpretation is "based on a permissible

interpretation of the statute."  Id.  When an agency's interpretation is called for, unless it is "plainly erroneous," the agency interpretation is entitled to deference by the reviewing court.  Id.

Here, 47 U.S.C. § 309 expresses a clear Congressional policy and intention for the FCC to enter the realm of private contracting parties. Congress expressly instructed the FCC to become a creditor for the small business designated entities like Alpine, and it instructed the FCC to secure its creditor interests.  The FCC, in interpreting the instructions of Congress, used commercially-reasonable methods to commemorate Alpine's debt commitments with the Notes and entered into the Security Agreements to secure its interests.  Among the various terms which the FCC interpreted as necessary or appropriate to effect Congress' intention, the FCC decided that the exclusive forum for all lawsuits arising out of the Notes or Security Agreements was to be the District Court.  This was a reasonable interpretation by the FCC of its Congressionally-bestowed jurisdiction.  The District Court, and this Court, should defer to the FCC's selection of that forum under the *Chevron* and *City of Arlington* standards and give effect to the Forum Selection Clause.

### E. Congress Did Intend To Waive The FCC's Sovereign Immunity To Alpine's Breach Of Contract Suit.

A court interprets whether Congress intended to waive sovereign immunity not by "a ritualistic formula", but instead by reference to the intent to waive immunity and the scope of such a waiver by reference to underlying congressional policy. *Franchise Tax Bd. Of California v United States Postal Service*, 467 U.S. 512, 521 (1984), quoting *Keifer & Keifer v. Reconstruction Finance Corp., 306 U.S. 381, 389 (1939)*, additional citations omitted. Courts have held that Congress' intent to waive sovereign immunity can be inferred from language indicating that Congress intended to inject an agency's activities into the commercial world, for instance with language indicating that the agency could "sue or be sued". *Franchise Tax Bd.* 467 U.S. at 518, (in the absence of a showing to the contrary, "it must be presumed that when launched a governmental agency into the commercial world and endowed it with authority to 'sue or be sued,' that agency is not less amenable to judicial process than a private enterprise under like circumstances would be."), quoting *FHA v. Burr*, 309 U.S. 202, 245 (1940). The Court similarly found that Congressional language indicating that it contemplated an agency could "settle and compromise claims" satisfied a clear intention from Congress that

sovereign immunity was waived for the authorized actions. *Franchise Tax Bd.* 467 U.S. at 519.

Here, again, Congress' intention for the FCC to engage Alpine as a commercial player is well established by the language of 47 U.S.C. § 309. It was clearly Congress' intention for the FCC to be subject to the gamut of obligations and privileges which inure to parties in a commercial relationship. The FCC effected Congress' expressed will by, among other things, selecting the District Court as the sole forum for all lawsuits arising between it and Alpine. The intent of Congress to put FCC in the place of an ordinary commercial actor, able to select the forum for its disputes, is explicit from Congress' stated policy and from the statute. On that basis, this Court should reverse the District Court's determination that sovereign immunity was not waived and should give force and effect to the Forum Selection Clause.

## VIII. <u>Conclusion and Relief Sought</u>

For the foregoing reasons, this Court should overturn the District Court's dismissal of Alpine's breach of contract claim against the FCC and remand to the District Court for further proceedings based on that claim.

Dated October 23, 2013          Respectfully submitted,

**Ross M. Babbitt Co., LPA**

  /s/ Ross M. Babbitt
Ross M. Babbitt (DC Cir. Bar No
54985)
  rbabbitt@babbitt-lawfirm.com
700 West St. Clair Avenue
Hoyt Block, Suite 200
Cleveland, OH 44113
Telephone: (216) 623-6346
Facsimile: (216) 274-9683

**Buckman Legal, PLLC**

Steven M. Buckman (DC Bar No.
321133)
  buckman@buckmanlegal.com

4315 50th Street NW Suite 60
Washington, DC  20016
Telephone:  (202) 351-6100
Facsimile:   (888) 624-7640

## <u>CERTIFICATE OF COMPLIANCE WITH FED. R. APP. P. 32(a)</u>

This brief complies with Fed. R. App. P. 32(a)(7)(B) because it contains 4,451 words, excluding those parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and it complies with Fed. R. App. P. 32(a)(5)(A) because it is typed in a proportionately spaced typeface using Word 2013 in 14 point Georgia font.

<u>  /s/ Ross M. Babbitt          </u>
Ross M. Babbitt
700 West St. Clair Avenue
Hoyt Block, Suite 200
Cleveland, OH 44113
Telephone: (216) 623-6346
Facsimile: (216) 274-9683

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of October, 2013, the foregoing was served by operation of the Court's electronic filing system and was also served by first class mail, postage prepaid, upon the following:

Lloyd H. Randolph
Jacob M. Lewis
Hillary B. Burchuk
Civil Division
U.S. Department of Justice
PO Box 875
Ben Franklin Station
Washington, DC  20044

Matthew H. Sorenson
Joanna L. Faust
Cameron/McEvoy PLLC
11325 Random Hills Road, Suite 200
Fairfax, Virginia  22030

_/s/ Ross M. Babbitt_____
Ross M. Babbitt